No. 1-06-0701

FIRST DIVISION
Filed: 6/29/07

ELLEN K. EMERY,                                    )          Appeal from the
                                                   )          Circuit Court of
            Plaintiff-Appellee,                    )          Cook County.
                                                   )
                                                   )
      v.                                           )
                                                   )          No. 05 L 5525
                                                   )
NORTHEAST ILLINOIS REGIONAL                        )
TRANSPORTATION COMPANY, d/b/a                      )
METRA,                                             )          Honorable
                                                   )          Joan Larsen,
            Defendant-Appellant.                   )          Judge Presiding.

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Plaintiff, Ellen Emery, an attorney, sued her employer, defendant Northeast Illinois

Regional Transportation Company (Metra), for injuries sustained when she tripped and fell over

a light socket in defendant's office. In an order dated February 17, 2006, the circuit court of

Cook County held defendant in contempt for its failure to produce documents which defendant

claimed were privileged, and this appeal followed. For the following reasons, we vacate the

contempt order and remand for further proceedings consistent with this opinion.

BACKGROUND

Plaintiff was employed as the associate general counsel of litigation for defendant on July

1, 1999, when she tripped and fell over a light socket in defendant's Chicago office and injured

her knee.

On appeal, the record does not contain the trial court's order directing the defendant to

produce documents. The record does contain orders directing the defendant to produce a log of the documents it withheld pursuant to its claim of privilege. On August 17, 2005, the trial court ordered defendant to produce its "privilege log in 30 days." On September 28, 2005, the trial court ordered a conference on October 12, 2005, for "status on defendant's privilege log." On October 12, 2005, the trial court entered an order stating "defendant's privilege log by 10/19/05; status on privilege log." On October 21, 2005, the trial court entered an order stating "defendant has 7 days, until October 28 to amend privilege log and provide signed copy of affidavit."

On October 25, 2005, defendant's counsel sent plaintiff's counsel a document production privilege log and an affidavit of Michael Noland, defendant's general counsel. The log listed 11 items authored by Donna Anderson, a self-insured claims person employed by Metra who claimed the items were privileged as work product and under the attorney-client privilege. Five of the items were described as "handwritten notes of Donna Anderson" and six were described as letters from Anderson to "Judith L. Tancula, Director of Risk Management." Nothing in the record indicates that any of these documents were directed to Metra's attorney, Michael Noland.

Noland's affidavit stated that "at my direction, the [Metra] Risk Management Department, through Ms. Anderson, undertook an investigation into Ms. Emery's injury claim." Noland stated that Ms. Tancula, as director of risk management, supervises a staff of claims specialists and that Ms. Anderson was the claims specialist assigned to handle plaintiff's case.

On November 14, 2005, plaintiff moved to compel defendant to produce the 11 items listed on the privilege log. On December 2, 2005, defendant in its response to plaintiff's motion to compel claimed that "[t]he documents prepared by Donna Anderson should be protected from

2

disclosure as privileged communications under the work product and attorney client privilege as extended to insurer/insured communications because Metra is self-insured." In other words, defendant claimed that the attorney-client privilege, which has been extended to insurer/insured communications, should be further extended to self-insured entities.

On December 16, 2005, the trial court issued an order granting defendant 21 days to amend "the affidavit regarding *** the Donna Anderson documents." On January 18, 2006, defendant filed a supplemental affidavit from Noland stating the documents on the privilege log "were generated at my direction and in anticipation of possible litigation."

On February 17, 2006, the trial court entered an order holding defendant in contempt for failure to produce documents. The order stated in full:

"This cause coming to be heard on the status of plaintiff's

motion to compel, the parties being present and the court being

advised in the premises, it is hereby ordered:

1. the parties agree to an order finding the defendant in

contempt for refusing to produce the documents as ordered;

2. the defendant is assessed a penalty of $10.00."

On March 8, 2006, the defendant filed a notice of appeal requesting that "the court's order compelling production be reversed, that its contempt order be vacated, and that the matter be remanded *** for further proceedings." This court held oral argument on May 16, 2007, and directed the parties at that time to file supplemental briefs on the issue of whether the trial court's order was a valid contempt order and whether this court had jurisdiction to hear the appeal.

No. 1-06-0701

In its supplemental brief, defendant claimed that the order was for civil contempt, that the absence of a purge provision did not render the order invalid, and that the order's imposition of a sanction gave this court jurisdiction to hear the appeal. In her supplemental brief, plaintiff agreed with defendant that the order was final and appealable because of the imposition of a sanction; however, plaintiff claimed that the order was for criminal contempt, not civil. Arguing in the alternative, plaintiff claimed that even if the order was for civil contempt, this court still had jurisdiction to hear the appeal because an appellate court must be able to give a contemner relief from an invalid order. Plaintiff cited no cases in support of its alternative argument.

For the reasons stated below, we vacate the contempt order and remand for further proceedings consistent with this opinion.

ANALYSIS

"Even where no party raises the question, a reviewing court has a duty to consider sua sponte its jurisdiction." Vowell v. Pedersen, 315 Ill. App. 3d 665, 665 (2000). In Vowell, this court dismissed an appeal sua sponte because of an invalid contempt order. Vowell, 315 Ill. App. 3d at 666.

The order in Vowell, like the order in the case at bar, was simply a mechanism to gain appellate court review. Vowell, 315 Ill. App. 3d at 666. Illinois Supreme Court Rule 304(b)(5) permits this court to hear an appeal from "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty." 210 Ill. 2d R. 304(b)(5). The Illinois Supreme Court has stated that "it is well settled that a contempt proceeding is an appropriate method for testing the correctness of a discovery order." Reda v. Advocate Health Care, 199 Ill.

4

2d 47, 54 (2002); Norskog v. Pfiel, 197 Ill. 2d 60, 69 (2001).

In Vowell, we held "[i]n order for this court to assume jurisdiction, the contempt order must impose sanctions of some kind." Vowell, 315 Ill. App. 3d at 666. Thus, the trial court in the instant case imposed the nominal sanction of $10, which confers jurisdiction on this court.

The trial court's contempt order did not state whether it was for criminal or civil contempt. "The primary determinant of whether contempt proceedings are civil or criminal is the purpose for which the contempt sanctions are imposed." In re Marriage of Sharp, 369 Ill. App. 3d 271, 278 (2006), citing In re Marriage of Betts, 200 Ill. App. 3d 26, 43 (1990). Civil contempt is "designed to compel future compliance with a court order" and is "avoidable through obedience." In re Marriage of Sharp, 369 Ill. App. 3d at 279; In re Marriage of Betts, 200 Ill. App. 3d at 43 (purpose of civil contempt is "to compel the contemnor to perform a particular act"); Helm v. Thomas, 362 Ill. App. 3d 331, 334 (2005) (purpose of civil contempt is "to compel a future act"). By contrast, criminal contempt is "instituted to punish, as opposed to coerce, a contemnor for past contumacious conduct." In re Marriage of Sharp, 369 Ill. App. 3d at 279; In re Marriage of Betts, 200 Ill. App. 3d at 43 (criminal contempt is "imposed for the purpose of punishing past misconduct"). "Criminal sanctions are retrospective in that they seek to punish a contemnor for past acts that he cannot now undo." In re Marriage of Sharp, 369 Ill. App. 3d at 279; Helm v. Thomas, 362 Ill. App. 3d at 334 (purpose of criminal contempt is "to punish [defendants] for prior conduct that they could not undo"); In re Marriage of Betts, 200 Ill. App. 3d at 46 ("Criminal sanctions are retrospective in nature; they seek to punish a contemnor for past acts which he cannot now undo" (emphasis omitted)). They constitute punishment for

"disrespectful, disruptive, deceitful and disobedient acts." In re Marriage of Betts, 200 Ill. App. 3d at 45. "[T]he reasons for imposing punishment for criminal contempt are much the same as the rationale for punishing other types of misdemeanor criminal conduct." In re Marriage of Betts, 200 Ill. App. 3d at 44.

In the case at bar, the purpose of the trial court's order was to compel future compliance through the production of withheld documents. It was also a mechanism to gain appellate court review as noted. The sanction of a mere $10 against a large corporate defendant shows that the trial court had no intent to punish the defendant. In addition, the defendant had not engaged in any past, disrespectful conduct toward the court. As the court's order stated, the parties had simply "agreed" to the contempt order, as a means to test the validity of the court's order to disclose the withheld documents. Thus, the purpose of the order shows that the contempt was civil, not criminal.

However, the trial court's order in the case at bar was not a valid civil contempt order. Pancotto v. Mayes, 304 Ill. App. 3d 108, 112 (1999). Reda contains an example of a valid civil contempt order entered for the purpose of challenging discovery disclosure. The trial court in Reda specified that the contempt was civil, not criminal, that the reason for the contempt finding was plaintiff's attorney's refusal to comply with the court's discovery orders, that the sanction was $100 plus $10 per day, and that the attorney could purge herself of the contempt by disclosing "Emilio's psychiatric records" to defendants. Reda, 199 Ill. 2d at 53.

The order in the case at bar was nothing like the civil contempt order in Reda. Unlike the order in Reda, the order in the case at bar failed to specify whether the contempt was civil or

criminal or even what specific documents the contemnor had to produce.

The contempt order in the case at bar states only that the defendant refused "to produce the documents" without any description of the documents. Even if this court were to assume that the type of documents intended in the trial court's contempt order were the documents listed on defendant's privilege log, this court has no way of knowing whether the trial court ordered the defendant to produce all 11 of the listed documents

It may be that the trial court described orally to the parties the documents at issue in the contempt order. Even if the trial court made such an oral statement, the transcript of the contempt proceedings was not made a part of the record before this court.

The contempt order states that the defendant refused to produce the documents "as ordered." However, the contempt order does not identify a prior disclosure order by date. In addition, the record on appeal does not include an order or any other evidence that the trial court previously ordered the defendant to produce the documents listed on the privilege log or to produce any documents at all. "Review of the contempt finding necessarily requires review of the [discovery] order upon which it is based." Norskog, 197 Ill. 2d at 69; In re Marriage of Sharp, 369 Ill. App. 3d at 277.

The record on appeal shows that the trial court ordered the defendant to produce only a privilege log and an accompanying affidavit and that the defendant complied. Thus, far from showing evidence of contempt, the record reveals only evidence of compliance. "The law is well settled that appellants bear the duty to 'present a record *** which fairly and fully presents all matters necessary and material for a decision of the question raised.' " Smolinski v. Vojta, 363

7

Ill. App. 3d 752, 757 (2006), quoting <u>LaPlaca v. Gilbert & Wolf, Inc.</u>, 37 Ill. App. 3d 259, 260-61 (1976); <u>In re Marriage of Sharp</u>, 369 Ill. App. 3d at 274; <u>Webster v. Hartman</u>, 195 Ill. 2d 426, 432 (2001).

In addition, the claimed privilege documents were not submitted to the trial court or this court for <u>in camera</u> inspection. Without viewing the documents, it would be difficult if not impossible for any court to determine whether a privilege applies under the facts of this case. "In the absence of such a record, we will not speculate as to what errors may have occurred below." <u>Smolinski</u>, 363 Ill. App. 3d at 757. In sum, if the parties want to use contempt proceedings as a means to test the validity of a disclosure order, the reviewing court must receive, at the very least, the order requiring defendant to produce specific documents, and unless the contents of the documents have been fully explained in some writing, the court must have the ability to review the documents <u>in camera</u>.

CONCLUSION

For the foregoing reasons, we vacate the order of the trial court and remand for further proceedings consistent with this opinion.

Vacated and remanded.

McBRIDE, P.J. and CAHILL, J., concur.