# Illinois Official Reports

## Appellate Court

---

### *BMO Harris, N.A. v. Kautz*, 2014 IL App (2d) 140399

---

| | |
|---|---|
| Appellate Court Caption | BMO HARRIS, N.A., formerly known as Harris, N.A., Plaintiff-Appellee, v. WILLIAM R. KAUTZ, KAUTZ FARM.ORG NFP, PAULA KAUTZ, KAUTZ EQUIP, LTD., and UNKNOWN OWNERS and NONRECORD CLAIMANTS, Defendants-Appellants. |
| District & No. | Second District<br>Docket No. 2-14-0399 |
| Filed | August 22, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In mortgage foreclosure proceedings for property consisting of 5.67 acres used primarily as farmland, but with one large building containing a show room, a lunch room area, an office, meeting rooms, a maintenance area, and an apartment used as the primary residence of the mortgagor and his family, the appellate court reversed the trial court's order giving plaintiff mortgagee the presumptive right to possess all of the property, except the apartment, and the right to have a receiver appointed, and remanded the cause based on the findings that the entire property was residential real estate, defendants had the presumptive right to possession and plaintiff had the right to rebut that presumption, since the property had only one dwelling unit occupied by the mortgagor and should have been classified as residential real estate pursuant to section 15-1219 of the Code of Civil Procedure. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 13-CH-2101; the Hon. Leonard J. Wojtecki, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Patrick M. Kinnally and Michael W. Lenert, both of Kinnally, Flaherty, Krentz & Loran, P.C., of Aurora, for appellants. |
| | |
| | Scott C. Frost and Daniel S. Rubin, both of Howard & Howard Attorneys, PLLC, of Chicago, for appellee. |
| | |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1    This appeal arises out of foreclosure proceedings initiated by plaintiff, BMO Harris, N.A. (formerly Harris, N.A.), against defendants, William and Paula Kautz, Kautz Farm.org NFP, Kautz Equip, Ltd., and unknown owners and nonrecord claimants (collectively, the Kautzes).[1] It concerns the trial court's interlocutory order to appoint a receiver over a portion of the subject property as requested by BMO Harris. Because the trial court erred in giving BMO Harris the presumptive right to possess the property and thus the right to have a receiver appointed, we reverse and remand, giving the Kautzes the presumptive right to possess the property and giving BMO Harris an opportunity to rebut the presumption, if it so chooses.

¶ 2                                    I. BACKGROUND

¶ 3    According to the documentation submitted by the parties, the property at issue is located on Route 38 in Geneva. It consists of 5.67 acres, which are primarily used as farmland. The produce grown on the farmland is either consumed by the Kautzes, given to friends and neighbors, or donated to a local food bank. There is only one building on the property. It is a 7,673-square-foot, L-shaped building. It contains a show room, a lunch room area, office and meeting rooms, and a maintenance area. The Kautzes have used the building for various purposes. They operate a bakery out of the first floor. They also have used the building to work on race cars and tractors. Finally, the building contains a 750-square-foot apartment,[2] which the Kautzes have used as their primary residence at all times relevant to this case.

_____

[1]The exact relationship among the various defendants is unclear from the record. Although William and Paula are husband and wife, only William signed the mortgage agreement. Kautz Equip, Ltd., has acted as a guarantor on the mortgage, and other persons or entities (some unknown) also have an interest in the property.

[2]The Geneva township assessor has listed the square footage of the residence at 2,009, rather than 750. However, the exact square footage is not relevant to this case. Rather, the fact that the Kautzes use a portion of the property as their primary residence is relevant.

¶ 4    In 2010, the Kautzes defaulted on their mortgage. As of the maturation date, $259,000 in principal remained on the loan. Additionally, Kautz Equip, Ltd., which had served as a guarantor, was involuntarily dissolved.

¶ 5    As a result, in September 2013, BMO Harris initiated foreclosure proceedings against the Kautzes. BMO Harris also moved for the appointment of a receiver. The trial court granted the motion as to all portions of the property except for the living quarters, or "dwelling unit," in which the Kautzes maintained their primary residence. The court's decision was based on its finding that the majority of the property (excepting the dwelling unit) was nonresidential real estate. Where a property is nonresidential real estate, the mortgagee, here BMO Harris, has the presumptive right to possession and, therefore, the right to have a receiver appointed. 735 ILCS 5/15-1701 (West 2012). This appeal followed.

¶ 6                                    II. ANALYSIS

¶ 7    The Kautzes appeal, challenging the trial court's interpretation of the statutory term "residential real estate." They argue that the foreclosure statute instructs that the entire property, not just the dwelling unit, should be classified as residential real estate. Therefore, they assert, they enjoy the presumptive right of possession. The Kautzes request that we remand the cause to the trial court so that BMO Harris may seek to rebut the Kautzes' presumptive right to possession or, otherwise, concede possession to the Kautzes. As we will explain, we agree that the statute defines the entire property as residential real estate, because the condition that would limit the residential status of the property to the dwelling unit has not been met.

¶ 8    The primary goal of statutory interpretation is to ascertain and effectuate the legislature's intent in enacting the statute. *People v. Marshall*, 242 Ill. 2d 285, 292 (2011). The best indicator of legislative intent is the plain and ordinary meaning of the statute's language. *Id*. Where the language is clear and unambiguous, we apply the statute without reading into it any conditions, exceptions, or limitations not expressed by the drafter. *Timothy Whelan Law Associates, Ltd. v. Kruppe*, 409 Ill. App. 3d 359, 375 (2011). We apply the statute without further aides of statutory construction. *People v. Williams*, 239 Ill. 2d 503, 506 (2011). At the same time, we are not bound by the plain language if it produces absurd, inconvenient, or unjust results. *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 134 (2005). We evaluate the statute as a whole, with each provision construed in connection with every other section. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 180 (2011). We review *de novo* a trial court's interpretation of the statute. *Timothy Whelan*, 409 Ill. App. 3d at 375.

¶ 9    Here, the statute dictates as follows. Whether the presumptive right to possession belongs to the mortgagor or the mortgagee depends upon the property's classification. 735 ILCS 5/15-1701 (West 2012). If the property is classified as residential real estate, the presumptive right to possession belongs to the mortgagor. 735 ILCS 5/15-1701(b)(1) (West 2012). In that case, if the mortgagee seeks possession, it must establish: (1) good cause to possess the property despite the presumption; (2) authorization by the terms of the mortgage agreement that it may do so; and (3) a reasonable probability of prevailing on a final hearing of the cause. *Id*. If the property is classified as nonresidential real estate, the presumptive right to possession belongs to the mortgagee. 735 ILCS 5/15-1701(b)(2) (West 2012). If the

mortgagee is entitled to possession and requests a receiver, the court shall appoint one. 735 ILCS 5/15-1702(a) (West 2012).

¶ 10    Section 15-1219 of the Code of Civil Procedure (Code) defines "residential real estate" as meaning:

"[A]ny real estate, except a single tract of agricultural real estate consisting of more than 40 acres, which is improved with a single family residence or residential condominium units or a multiple dwelling structure containing single family dwelling units for six or fewer families living independently of each other, which residence, or at least one of which condominium or dwelling units, is occupied as a principal residence either[:] (i) if a mortgagor is an individual, by that mortgagor, that mortgagor's spouse[,] or that mortgagor's descendants, or (ii) if a mortgagor is a trustee of a trust or an executor or administrator of an estate, by a beneficiary of that trust or estate or by such beneficiary's spouse or descendants[,] or (iii) if a mortgagor is a corporation, by persons owning collectively at least 50 percent of the shares of voting stock of such corporation or by a spouse or descendants of such persons. *The use of a portion of residential real estate for non-residential purposes shall not affect the characterization of such real estate as residential real estate.*" (Emphasis added.) 735 ILCS 5/15-1219 (West 2012).

¶ 11    Section 15-1701(b)(1) of the Code limits the above definition of "residential real estate" for the purposes of establishing the presumptive right to possession (and the accompanying right to have a receiver appointed). It states that "*[i]f* the residential real estate consists of more than one dwelling unit, *then* for the purposes of this Part residential real estate shall mean *only* that dwelling unit or units occupied by persons described in clauses (i), (ii)[,] and (iii) of Section 15-1219." (Emphases added.) 735 ILCS 5/15-1701(b)(1) (West 2012).

¶ 12    Section 15-1202.5 of the Code defines a "dwelling unit" as:

"For the purposes of[, *inter alia*, section 15-1701], 'dwelling unit' means a room or suite of rooms providing complete, independent living facilities for at least one person, including permanent provisions for sanitation, cooking, eating, sleeping, and other activities routinely associated with daily life." 735 ILCS 5/15-1202.5 (West 2012).

¶ 13    The parties disagree as to how the above-quoted provisions should be harmonized to classify the instant property. Again, section 15-1219 essentially states that, so long as the property includes a qualifying residence, the entire property is classified as residential; "[t]he use of a portion of residential real estate for non-residential purposes shall not affect the characterization of such real estate as residential real estate." 735 ILCS 5/15-1219 (West 2012).[3] Section 15-1701(b)(1), however, places a limitation on section 15-1219's broad definition of "residential real estate" for the purposes of creating the presumptive right to possession in foreclosure actions. That limitation states that, where the property contains more than one dwelling unit, only the dwelling unit in which the mortgagor maintains his or

---

[3]Of course, there are exceptions. If, for example, a primary residence is built upon more than 40 acres of farmland, the definition does not apply. However, BMO Harris appears to concede that the property has been improved with a qualifying structure–the residence in which the Kautzes live–to make (in its view, at least a portion of) the property residential for the purposes of section 15-1219.

- 4 -

her primary residence will qualify as residential real estate so as to provide the mortgagor with the presumptive right to possession.

¶ 14    We agree with the Kautzes that the section 15-1701(b)(1) limitation is not invoked to begin with, because the conditional "if," *i.e.*, that there be more than one dwelling unit on the property, was not met ("*[i]f* the residential real estate consists of more than one dwelling unit, *then* for the purposes of this Part residential real estate shall mean only that dwelling unit or units occupied by [the mortgagor]" (emphases added) (735 ILCS 5/15-1701(b)(1) (West 2012))).

¶ 15    Here, there is only one dwelling unit on the property. The property is improved with a large building that, in addition to the one dwelling unit in which the Kautzes live, contains a show room, meeting rooms, and a maintenance area and is used for various ventures such as a bakery and a vehicle service area. None of these improvements–the show room, the meeting rooms, the maintenance area–show the existence of more than one dwelling unit, equipped for independent living purposes with, as statutorily required, "permanent provisions for sanitation, cooking, eating, sleeping, and other activities routinely associated with daily life." 735 ILCS 5/15-1202.5 (West 2012). No person aside from the Kautzes lives on the property, and they live in the property's only dwelling unit.

¶ 16    The improvements within the building to which BMO Harris refers–the show room, the meeting rooms, the maintenance area–demonstrate that the property is used for *purposes* other than residential. However, the fact remains that the plain language of section 15-1701(b)(1) conditions the limitation (on what can qualify as residential real estate so as to provide the mortgagor with the presumptive right to possession) on the presence of more than one dwelling *unit*, not more than one *use*. The legislature has expressly defined "dwelling unit." Moreover, the legislature has expressly directed that its definition of "dwelling unit" be applied when considering whether section 15-1701 operates to limit the portion of residential real estate over which the mortgagor is given the presumptive right to possession. Here, there is *not* more than one dwelling unit. Therefore, per section 15-1701(b)(1), the condition limiting the definition of "residential real estate" to the unit occupied by the mortgagor does not apply. Rather, the general definition of residential real estate controls and, again, that definition states that "[t]he use of a portion of residential real estate for non-residential purposes shall not affect the characterization of such real estate as residential real estate." 735 ILCS 5/15-1219 (West 2012). Per the general definition of residential real estate, the property's multipurpose use does "not affect" the categorization as residential real estate, and, accordingly, the entire property is residential real estate.

¶ 17    Where the entire property is residential real estate, the mortgagor has the presumptive right to possession. Because the property here is residential real estate, the Kautzes have the presumptive right to possession, and BMO Harris has the burden of establishing that: (1) it has good cause to possess the property despite the presumption; (2) there is authorization by the terms of the mortgage agreement that it may do so; and (3) it has a reasonable probability of prevailing on a final hearing of the cause. See 735 ILCS 5/15-1701(b)(1) (West 2012).

¶ 18    BMO Harris's main argument, with which the trial court appears to have agreed, is that section 15-1701(b)(1)'s controlling phrase is "for the purposes of this Part residential real estate shall mean only that dwelling unit or units occupied by [the mortgagor]." 735 ILCS 5/15-1701(b)(1) (West 2012). In BMO Harris's view, this narrow phrase should control over the general definition of residential real estate set forth in section 15-1219. However, as

discussed, BMO Harris's desired reading does not account for the conditional "if" (*i.e.*, "*[i]f* the residential real estate contains more than one dwelling unit, *then* for the purposes of this Part residential real estate shall mean only that dwelling unit or units occupied by [the mortgagor]" (emphases added)). And, in interpreting a statute, we must read each phrase in connection with the others. See, *e.g.*, *General Motors*, 242 Ill. 2d at 180. Therefore, we reject BMO Harris's assertion that the latter portion of section 15-1701(b)(1) may be read in isolation so as to control the outcome of this case.

¶ 19 BMO Harris next attempts to argue, for the first time on appeal, that, in any case, there *is* more than one dwelling unit on the property. For the reasons set forth above (*supra* ¶ 16), we summarily reject that argument.

¶ 20 For the aforementioned reasons, we remand this cause, classifying the entire property as residential real estate, giving the Kautzes the presumptive right to possession, and allowing BMO Harris, if it chooses, to attempt to rebut that presumption by establishing that it has good cause to possess the property despite the presumption, that it is authorized by the terms of the mortgage agreement to do so, and that there is a reasonable probability that it will prevail on a final hearing of the cause. We express no opinion as to BMO Harris's ability to meet its burden on remand.

¶ 21                                    III. CONCLUSION

¶ 22 We reverse the trial court's appointment of a receiver and remand for further proceedings.

¶ 23 Reversed and remanded.